Good morning. My name is Robert Kolb. I represent debtor Donald Schneider in this case which involves the district court's determination that an otherwise excludable ERISA qualified pension plan has a split personality and is not excludable to the extent that the creditor is the IRS. This gives rise to the concept of the split personality of the property. The court's decision was apparently based on their conclusion that exclusion from the estate would alter the IRS's collection powers and that the ERISA plan is non-exempt from levy. Exclusion does not impact lien and levy law in the slightest. The property, even if it's excluded from the bankruptcy estate, is nevertheless still a personal property of the debtor outside of the bankruptcy estate and is fully subject to the existing lien and levy. The IRS can at any time on excluded property enforce its lien and levy on the property if levy is otherwise provided for under federal lien and levy law. And you concede it is? Pardon me? And you concede that it is? Yes. No, I do not concede that this plan is leviable at the current time. Our position is that the plan outside of bankruptcy can only be levied on when it's in a pay status. And I would equate levy meaning collection. The IRS cannot collect outside of bankruptcy until the plan is in a pay status. And I would direct you, Judge Hawkins, to excerpts of record 314 on lines 11 and 17 where the IRS represents to the bankruptcy judge that the plan is not currently leviable. They cannot currently levy on the plan because it's not in a payout status. What's the practical consequence of the holding that the IRS wants? Is it to put them in a better position than if your client had gone through Chapter 13? No. The IRS's position remains the same, except they do not get paid in the Chapter 13. No. No. What's the consequence if the IRS gets what it wants? Not if you get what you want. What's the consequence to the IRS if it gets what it wants? The Chapter 13 would be dismissible because it's non-feasible. And because they're not consenting? Pardon me? And the IRS is objecting to the plan? No, they're not objecting to the plan. We objected to their secured claim. I see. And that went to trial in the bankruptcy court. The bankruptcy court sustained the IRS position and the district court sustained the bankruptcy court. And it's non-feasible because? Simply not enough money to pay off the plan. We've got 80-some-odd thousand dollars owing to the IRS. And if that's secured, then that $80,000 has to be paid off in the bankruptcy plan over a period not exceeding 60 months. That's what I'm really driving at. That is to say, what the IRS position drives you to do is to pay off money as if it were a secured plan, money that you don't yet have. And if there were not bankruptcy, the IRS couldn't get its hands on that money out of that plan at an earlier time. That's exactly right, Your Honor. Okay. That's what I was driving at. Yeah. In the case of Patterson v. Shoemate, the Supreme Court held that a pension plan qualified under ERISA and containing a non-alienation clause is not property of the bankruptcy estate. And to be a secured plan in the bankruptcy, to be a secured claim in the bankruptcy, it must be secured against property of the estate. Therefore, if the plan is not property of the estate, then it's not secured in the bankruptcy case. However, that does not mean that outside of the bankruptcy, the IRS could not exercise whatever rights they have, whatever normal rights they have under applicable lien and levy law to levy on that property. We maintain that they can't levy on that property outside, and the IRS apparently concedes to that because that's the representation that they made to the bankruptcy court. And the reason they can't levy on it is that it's not yet in payout status? It's not in a payout status, and there's a doctrine that was enunciated by the U.S. Supreme Court in U.S. v. Rogers. Basically, this is the shoes of the taxpayer. Yes, sir. Yes, Judge. The shoes of the taxpayer. A levy is only effective against property that can actually be collected. At the current time, and for the next at least 11 years, the debtor has no property interest in the pension plan, has no interest in the benefits of the plan, and cannot receive any payments for approximately 11 years, so there's just nothing there that the IRS could levy on. I think we've got your position well in hand. Would you like to save a few minutes for rebuttal, and you can respond to the service to your heart's content? May I make one other comment? Sure. If you don't mind. Is it in your brief? Pardon me? Is it in your brief? There's note of it, yes. Okay. Why don't you just save it for rebuttal? Okay. Thank you. Thank you very much. We'll have from the service at this time. Good morning. Robert Brandman for the United States Internal Revenue Service. I should start by saying that if I were advocating to a legislative body how to redraft the bankruptcy code, I probably would not stick with the provisions that are here that we're dealing with in this case, which are primarily 541C2, which provides. Well, it looks like the banks and credit card companies are going to solve that for you. Okay. Well, we'll see what it looks like then and whether it's any better. Be sure it won't look good. Okay. If 541C2 said something a little more clear for this case, like ERISA pension plans are not property of the estate or are property of the estate, it might be a little clearer as to what we should do here. Why should we construe the bankruptcy code to give you rights that you don't have outside of bankruptcy? Well, we do have some. Well, the rights that we have outside of bankruptcy, perhaps I should clarify first, the IRS can levy, can serve a levy on the ERISA pension administrator. It won't accelerate payments that could not otherwise be made. But this will. This ‑‑ The result you obtained in bankruptcy court will. That's right. The result that we would seek in bankruptcy court. Why should we sanction that? Because that's the consequence of the Supreme Court's interpretation in Patterson v. Shumate of the language in 541C2, that applicable nonbankruptcy law is enforceable in a case under this title. They were looking only at ERISA, to be sure, not federal tax lien law. But the Internal Revenue Code does provide that we have a lien on the pension, that we can enforce it or foreclose it to within certain boundaries. No question this individual owes the government money for taxes, right? That's correct. And that's not going to go away? That's correct. Whatever happens in the bankruptcy court, it's not going to disappear into the night? That's correct. We could bring an enforcement action and obtain a judgment, and it wouldn't expire by the statute of limitations. We could wait until ‑‑ It's not dischargeable in bankruptcy. I'm sorry? It's not dischargeable. Judge King points out it's not dischargeable. Our security interest is not dischargeable in bankruptcy. It is harder to keep track of after bankruptcy because the personal liability may go away. The security interest would stay. Taxpayers will sometimes continue making contributions to their plan. Their plan interest may grow based upon additional contributions or market changes. And your interest and penalties will grow? And your interest and penalties will grow? That's correct. So everybody gets low growth, and you get your money in the end? Hopefully, if the IRS doesn't drop the ball sometime between now and 11 years from now. Has the IRS always taken a consistent position as to this question? Probably not. Probably not. For example, the Parskey case. Which case? Parskey. In that case, you may remember, the IRS argued that this was not a secured interest because it wished to enlarge the amount of money in the estate that was unsecured so that the debtor would not be able to do Chapter 13. So would the real IRS stand up? Well, the IRS has lots of attorneys taking different positions at different times trying to figure out what the bankruptcy code means, which itself is not always consistent. The only commonality I can see between the position taken by the IRS in this case and the position taken by the IRS in the Parskey case is that IRS wins both times. Well, I won't defend the position that the IRS took in another case, which might not be consistent with this case. One thing to consider in the outcome of this case might be what it would be like if – well, there is the possibility that Mr. Snyder will become eligible for a payout during the life of the plan. If he's injured and becomes disabled, he becomes eligible for payments. The plan also provides that in another set of facts, someone could file the bankruptcy petition within – the life of the plan could include the portion of time that a person becomes eligible for bankruptcy – I'm sorry, for retirement payments. I think that the court's result in this case should take account of the fact that it's during the life of their plan, of the plan, and the plan in that case would be something that the IRS could collect through the bankruptcy. Anything else? How do you interpret Patterson? Patterson means that the term applicable non-bankruptcy law in 541C2 includes federal non-bankruptcy law. And the court in lines, and I would agree that the phrase applicable non-bankruptcy law must therefore include federal tax lien law. And the law is clear that federal tax liens attach to a risk of qualified pension plans. There's no dispute that we have a tax lien on the pension interest in bankruptcy and outside of bankruptcy. Thank you for your argument. I appreciate it. Thank you for coming in today. Counsel? You know, there's no rule that requires you to argue. I know, and many years ago when I first started practicing law, a judge told me, if you're ahead, keep your mouth shut. Well, don't assume that. I agree with the questions that you ask, counsel. There's no dispute about the attachment of an IRS lien. The only dispute is, does that property come into the bankruptcy estate? And our answer is no, that it does not, because it's not property of the estate under Patterson. Patterson stated that a risk of qualified pension plans with an anti-alienation clause is not included in the estate. It didn't say. It based that decision on the character of the property and the anti-alienation clause, and that was followed almost word for word by this court in the case of Reuter in 1993, where this court stated you have to look no further than to determine if there's a qualified anti-alienation clause under ERISA, and the property is thus excluded. Counsel seems to, or the IRS seems to think that if you have a bankruptcy, that alters federal lien and levy law by permitting them to collect inside the bankruptcy what they cannot collect outside. We agree that outside they can take whatever action they want. If they want to reduce it to a judgment, that's fine. If they want a levy, they'll get nothing until the property is in a payout status. All we want to do is to get it outside the bankruptcy estate so Mr. Snyder can complete his bankruptcy plan and get rid of the debts that he seeks to discharge. The lien survives. There's no doubt about that. IRS can act on it at any time they wish. Thank you. Thank you for your argument. Thank both sides for their argument. They were helpful. The case just argued will be submitted for decision and will proceed to the second argued case on the calendar, which is Sasson v. The County of Kings. May I make one? I hate to do this. You're done. Thank you. Mr. Nofsinger? Yes. Good morning. Good morning. My name is Henry Nofsinger, representing the plaintiff. And I bring to the Court's attention that this case follows the case of Zeltzer v. The City of Oakland. The case was a decision came down on April 8th of this year, and there are very similar issues. In both cases, the law enforcement agencies would seize property from the pawn shops, and then they would put the property in the property room and never provide a hearing, as required by the financial code sections and the penal code sections, just hold the property, never return it, and they're still holding the property a year or two later. My understanding is the criminal cases to which these – there's two items, right, two rings? Yes. Those criminal cases are over and done with? There were never any – yes, yes. One never went to – one was just ancient history, the one criminal case. The other case did go to trial, yes. And the rings are still in the possession of law enforcement? Or have they been returned to your client? Yes. They're still in the possession of law enforcement, yes. And your client could bring a civil action for their return? For the return of the rings, as provided in the financial code, we're entitled to a hearing, both by the financial code sections we've cited and the penal code sections we've cited. They're entitled to a hearing as to what their rights are in the ring, whether the ring was properly given to the pawn shop, who's the rightful owner of the pawn shop, what are the rights. Pawnbrokers have rights to recovery of property from the victim. If there's a victim in the case, one of the conditions of probation is that they reimburse the pawnbroker. But the fact of the matter is this has been a year or so that the law enforcement agency, the sheriff's department, sees the property. They put it in their property room. They never provide a hearing. They just keep the property. They don't return it to the victim. They just keep the property. What is it your client wants? We want a hearing. We want the hearings to which we're entitled. Or our property returned to us. If there's no crime, there's no reason that they should be having the property. Have you asked for a hearing for return of the two rings? Oh, yes. I got the impression you were suing for denial of civil rights. Yes, that's correct. Where was the complaint for a hearing on returning the rings? That's this case. We filed a suit in order to get them to return the ring. And is there no State law procedure or municipal procedure for asking for a hearing for return of the ring? Well, we informally asked for hearings. Not in a written form, but they take the property. It's their duty under the law to provide the hearing. It's not up to the, you know, can they keep the property indefinitely? Is it just going to sit there from now until eternity? If the day after you had filed this action on behalf of your client, law enforcement returned the two rings and otherwise complied with the law, what would be left of your lawsuit? Well, we do have You serve them with the complaint, and the next day the property custodian calls you up and said, come down and get them. Would there be anything left of your suit? That probably would have ended the case. But we do, as the case went on, the lower court did dismiss some of the defendants, such as Costner, because we hadn't proved that Costner had done the things that we alleged Whereas, you know, in pre- Matter of fact, this is a pre-discovery case that we're in right now. Pre-trial, pre-discovery. And we maintain that all we needed to do was to allege, reasonably allege that Jay Costner had done the things that he did, but the court required that we prove it at a pre-discovery stage, which we could not do. And we believe that the law is that the allegation should be sufficient for us to take the case to trial. Why don't we hear from the county, and you can rebut if you'd like. Yes. Thank you very much. Yes. Thank you. Appreciate you coming in. Good morning, Your Honors. I'm James Arch, and I represent the defendants and appellees in this case. Why not give them the rings back? Your Honor, we've jumped outside of the record with discussing about the current status of the rings. I can tell you after this lawsuit was filed, it was agreed with plaintiff's counsel, and I have letters confirming our agreement that the Kings County Sheriff's Department would maintain custody of these rings pending this lawsuit. And that's what we've done with plaintiff's counsel's agreement. That's why we still have the rings. The true owners of the rings are still we still have contact with the true owners of the rings. We haven't given them the rings back to the true owners. We haven't given them back to the pawn shop. This lawsuit was filed. We've held on to the rings, and that's why. There are other parties out there with interest in these rings as well. What ordinarily happens in a situation like this where law enforcement thinks that items of property in the possession of a pawn shop owner are fruits of a crime or evidence of a crime, and they're obtained by law enforcement? What normally happens? I guess that would depend on whether or not there was a criminal prosecution in this case. Let's assume, A, there was a criminal prosecution and there was a conviction. What happened? I'm not sure, to be honest with you. We haven't gotten that far. When the criminal case is over, do the rings go back to the victim? There is some methodology for reimbursing the out-of-pocket costs of the pawn shop owner. There are some financial code sections that deal with that, and I think it's 212.06.8, and penal code sections, 14.07 to 14.13, that deal with disposing or transferring the property after the law enforcement agency no longer needs it. And both of those sections start by somebody submitting a claim for the property, either the true owner submitting a claim for the property, a request to have the property returned, or the pawn shop owner submitting a claim, a claim for a notice and hearing. But eventually a judge has to decide who's going to have that property. The Sheriff's Department just holds it. They're just holding it. They're custodians. Right. They can't do anything. Let's assume the scenario of no prosecution. There's not enough evidence. The local DA declines prosecution. There's just no criminal case results. What happens to that item? The same process. Somebody has to make a claim for it. And if they don't make a claim, it just sits there? Well, let me back up a little bit. One section, Financial Code 202-06.8, I think, requires notice be given to the true owner. Not the pawn shop, but the true owner. And the property can actually be turned over to the true owner. But notice also has to be given to the pawn shop owner that the property has been turned over and give him notice and opportunity to be heard as to who should get that ring. And the pawn shop owner does have an interest in the ring. He's loaned out money to somebody in return for that ring. So he does have an ownership interest as well as the owner. But basically a judge has to decide who's going to get that ring and who owes what amount of money for it. I'm a little confused. I thought this was a civil rights suit. It is, Your Honor. Is there a claim? Did somebody file a claim for the rings? No, there's never been. Just a civil rights suit that you violated my rights. Exactly. And that's why when you initially asked the question, we were jumping outside of the record as to where the ring is and what's going on with it. But it is a civil rights lawsuit with seven or eight defendants named, several causes of action. I think we had a total of seven complaints. The claim for the ring is involved in this suit. What's before the court here? Before the court here are all the causes of actions against the individual defendants in this lawsuit, from the sheriff down to six or seven deputies. And that is what's addressed in my brief, are the causes of actions against the deputies and the lack of allegations and the lack of facts to support the allegations in the motion for summary judgment. Basically this case became a war of attrition. We started out through motions to dismiss and a motion for summary judgment, and there were a total of seven complaints filed with about seven or eight defendants. And we whittled away the causes of action against these defendants all the way to the last defendant and the last claim via motion for summary judgment. And that's my understanding of what this appeal was about, these civil rights violations against these individual defendants. Let me understand the procedure. You're holding rings, whether it's this case or some other case, you're holding rings that were taken from a pawn shop because you thought that they had been stolen. What can the owner of the pawn shop do to precipitate a hearing under which a state court will decide who has what ownership rights in the ring? I'm not sure if under the code, the financial code and business and professions code, if there is some avenue for the pawn shop owner to do that. Other than filing a claim for damages with the county or an application with the court, I'm sure there are things that they can do, but I don't think that the code sections that deal with pawnbrokers specifically outline what they can do. But obviously, there are things they can do with it. And in this case, the pawn shop owner, Mr. Sasson, never went to the sheriff's department and said, can I have my ring back? Well, he just said he did. No, he did not. And again, that's outside the record whether he did or he didn't. That may not be outside the record. That may be within the record, Your Honor. Well, that's proving a negative by what's either in or is not. But you're saying that there is some post-deprivation procedure available to the pawn shop owner by which he can test whether or not those rings belong to him or whether he has some property interest in those rings. Again, I don't think the statutes specifically state this is their avenue to do this, but I think they can do it by filing an application with the court, a claim for damages with the county, something as simple as that. But again, with regards to these two rings, they stayed where they were upon agreement by the parties. Again, now that is outside of the record, but so is the entire argument about where the rings are right now. The claim may simply be that the initial seizure was the violation of the rights rather than a claim that there's an absence of a post-seizure procedure. Okay. Thank you. And, Your Honor, that was part of the claim that is addressed in the brief, that the actual seizure was alleged to be a civil rights violation. And again, there's two rings. One was seized pursuant to a search warrant, and one was seized under the rules in Sanders and G&G Jewelry. And the second was the so-called ladies' ring, and this very odd receipt was issued. Yes, Your Honor. Okay. Thank you. Thanks for your argument. Thanks for coming in today. Rebuttal? Yes. With regard to the issue about asking for the rings back, it was the pawnbrokers that made their requests to the sheriff's department to get their property back. When am I going to get my property back? They kept insisting on getting that, and the sheriff's department would just keep putting them off. They'd say, when do I get my hearing? The sheriffs would keep putting them off. That's why we filed a lawsuit, because so it's – I didn't personally call them, because the pawnbrokers had already done this. We filed a suit. That's our request for it. You would think the day they get the suit, they read it and say, oh, yes. As a matter of fact, with regard to the ladies' ring, there is basically no basis upon which they could give it back. The statute for criminal actions or the statutes for civil actions had long, years ago, passed away. And they had no right at all to seize these rings in the first place, particularly that ladies' ring. I shouldn't have said about the men's ring, but the ladies' ring, there was just no basis for them to ever take it and why they don't return it. We go through hearing after hearing. All we want is, you know, a hearing. We don't want to keep having hearings in court. We want to have the kind of a hearing that's going to provide us an opportunity to decide whether the ring should be returned or not. And it was just set out so clearly in the financial code and the penal code. I don't know why they don't just read it and do it. Why don't they give us a hearing? That's a small thing for them to do, rather than have us here in this Court. I think we understand your argument. We appreciate both of you coming in today. The case just argued will be submitted, and we will decide this case. But this is just a suggestion. As you exit the courthouse, on the first floor, in that corner of the building, is our circuit mediation office. They're really talented people, and they are expert in resolving the case. It's entirely up to the both of you if you'd like to drop by there and see if they can assist in some way in resolving the case. Thank you very much. Thank you both for coming in today. Appreciate it.
judges: Hawkins, W.fletcher, King